**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORI DIETER,** | : | **Civil No.  1:19-CV-1081** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

I.  **Introduction**

Social Security appeals often entail the evaluation of competing medical opinions. In this setting, on occasion, the sufficiency of an Administrative Law Judge's (ALJ) evaluation of this medical opinion evidence is affected by when those opinions are rendered, and the degree to which those opinions adequately address later-acquired medical information.

Typically, state agency experts provide opinions regarding disability claims at an early stage of the administrative process. There is nothing improper about this procedure; indeed, some threshold medical evaluation of a claim is both appropriate and necessary. However, when an ALJ gives great weight to opinions proffered at the outset of the administrative process without providing adequate consideration to subsequent, material intervening medical events, a remand may be necessary to

ensure that sufficient and proper consideration was given to all of the medical evidence.

So it is in this case.

This case involves an extraordinary confluence of circumstances. For the past three decades, the plaintiff, Lori Dieter, has suffered from multiple sclerosis (MS), a severe, and often progressive, neurological disorder. On June 30, 2016, Dieter applied for Social Security disability benefits based upon the progression of this disease. (Tr. 12). At the time of this disability application, Dieter, who was in her 50's, was considered a worker approaching advanced age under the Commissioner's Medical-Vocational Guidelines. As an older worker with limited transferable job skills, Dieter would be deemed disabled under these guidelines if she could only perform less than light work.

In this case, the Administrative Law Judge (ALJ) who denied Dieter's disability claim, found that she could perform light work. In reaching this result, the ALJ gave great weight to the September 23, 2016 opinion of a non-examining state agency expert, Dr. Potera, who opined that Dieter could perform light work. (Tr. 19, 125-32). This preliminary opinion was rendered near the outset of this disability adjudication process based upon a limited body of clinical evidence.

However, subsequent treating source medical evidence assessing Dieter's condition between October of 2016 and June of 2018 cast significant doubt upon this

initial non-examining source evaluation. These treating source records revealed that beginning in October of 2016, Dieter experienced increased difficulty with her balance and walking. (Tr. 499, 530, 557, 728, 826-27). In February of 2017, Dieter was briefly hospitalized after her legs gave out, an increased level of disability that was attributed to an exacerbation of her MS. (Tr. 527, 653, 660, 691). Consequently, Dieter was prescribed a cane in March of 2017, (Tr. 529-33), and the undisputed evidence disclosed that she frequently used a cane to ambulate in 2017 and 2018. (Tr. 61-107). By April 2018, her treating physician, Dr. Sabre, frequently documented her abnormal gait, unsteady balance, and difficulties walking. (Tr. 697, 707, 716, 718, 724). Further on June 5, 2018, Dr. Sabre opined that she was now disabled due to these impairments. (Tr. 689-90). None of this medical evidence was available to Dr. Potera in September of 2016, when he initially opined that Dieter could perform light work. Moreover, all of this evidence undermined the reliability of Dr. Potera's preliminary evaluation of this case. Further, given Dieter's age and status under the Medical-Vocational Guidelines, if she could not perform light work she would be deemed disabled. Therefore, this uncertainty regarding the reliability of Dr. Potera's light work assessment could very well be outcome-determinative in Dieter's case.

Notwithstanding this subsequent material medical evidence which cast significant doubt upon Dr. Potera's preliminary September 2016 opinion and that

opinion's suggestion that Dieter could perform a full range of light work, the ALJ found that Dieter could perform light work and denied this disability claim. In denying this disability claim, the ALJ placed significant weight upon the early state agency opinion without directly addressing how the subsequent treatment and opinion evidence spanning nearly two years affected or undermined the weight to be given to those initial assessments.

In our view, more is needed here. Accordingly, for the reasons set forth below, we will direct that this case be remanded for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

Lori Dieter was diagnosed with multiple sclerosis, a frequently progressive neurological disorder, in 1992. (Tr. 18). As a result of this disorder, on June 30, 2016, Dieter applied for disability benefits pursuant to Title II of the Social Security Act, alleging an onset of disability on December 1, 2015. (Tr. 12). At the time of this disability application, Dieter was 51 years old, and was deemed a worker approaching advanced age under the Commissioner's regulations. (Tr. 20). She had a high school education, (<u>id.</u>), and had previously worked as a cashier and stock clerk. (<u>Id.</u>)

Shortly after Dieter submitted this disability claim, a non-treating, non-examining state agency expert, Dr. Leo Potera, opined on September 23, 2016 that,

notwithstanding her MS diagnosis, Dieter could still perform light work. (Tr. 125-32). Dr. Potera reached this conclusion based upon a review of the then-existing body of medical treatment records, which had described her condition as essentially stable. (Tr. 279-370). Thus, Dr. Potera did not have the opportunity to consider, or address, material medical developments in Dieter's case which took place after September 2016.

These material intervening events began the following month in October of 2016. In October of 2016, Dieter reported that she was experiencing increased difficulty with her balance and walking. (Tr. 499, 530, 557, 728, 826-27). These ambulation and balance challenges continued and compounded in 2017. In fact, by February of 2017, Dieter was briefly hospitalized after her legs gave out, an increased level of disability that was attributed to an exacerbation of her MS. (Tr. 527, 653, 660, 691).

Because of the increased severity of her impairment, Dieter was prescribed a cane in March of 2017. (Tr. 529-33). It is undisputed that Dieter frequently used the cane in order to ambulate throughout 2017 and 2018. (Tr. 17-18, 61-107). Treatment records spanning from October 2016 through April 2018 then frequently documented the exacerbation Dieter's MS, including her abnormal gait, unsteady balance, and difficulties walking. (Tr. 499, 557, 653, 660, 697, 707, 716, 718, 724).

Further, on June 5, 2018, Dr. Sabre, the plaintiff's treating doctor, opined that she was now disabled due to these impairments. (Tr. 689-90).

None of this evidence was available to Dr. Potera when he opined that Dieter could perform light work. Moreover, all of these subsequent medical developments cast doubt upon Dr. Potera's unqualified opinion that Dieter could perform light work.

The failure to fully account for these intervening medical developments had great potential significance for Dieter, a worker who is closely approaching advanced age, since the Secretary has promulgated guidelines on disability determinations that account for a claimant's physical abilities, age, education, and vocational skills as well as other factors, such as their RFC. <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. This rule-making process relieves the Secretary of the need to rely on vocational experts by establishing, through rulemaking, the types and numbers of jobs that exist in the national economy where a claimant's qualifications correspond to the job requirements identified by a particular rule. <u>Heckler v. Campbell</u>, 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). These regulations provide that the grids will direct a conclusion as to whether an individual is or is not disabled where the findings of fact made with respect to a particular individual's vocational factors and

residual functional capacity coincide with all of the criteria of a particular rule. 20

C.F.R. pt. 404 Subpt. P Appx. 2, § 200(a). Under these Medical Vocational

guidelines, if Dieter—a person who is closely approaching advanced age—was

found to be able to only undertake sedentary work, the grids may have mandated a

finding that she was disabled. <u>See</u> 20 C.F.R., Part 404, Subpart P, Appendix 2, §§

201.12 and 201.14; <u>Riley v. Colvin</u>, No. 3:13-CV-1223, 2014 WL 4796602, at *8

(M.D. Pa. Sept. 26, 2014).

It is against this clinical backdrop that a hearing was held on this disability

application on July 10, 2018. (Tr. 53-124). Dieter testified at this hearing, describing

her frequent use of a prescribed cane in order to ambulate. (Tr. 62-3, 107).

Following this hearing, the ALJ issued a decision on August 30, 2018 denying

Dieter's application for benefits. (Tr. 9-22). In that decision, the ALJ first concluded

the Dieter met the insured status requirements of the Social Security Act through

December 31, 2020 and had not engaged in any substantial gainful activity since her

alleged onset date of disability in December of 2015. (Tr. 14). At Step 2 of the

sequential analysis that governs Social Security cases, the ALJ found that Dieter's

multiple sclerosis and adjustment disorder with anxiety and depression were severe

impairments. (<u>Id.</u>) At Step 3, the ALJ determined that none of these impairments

met or medically equaled the severity of one of the listed impairments. (Tr. 15-16).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity assessment ("RFC") for Dieter which concluded that she could perform light work, the minimal level of work under the Commissioner's Medical-Vocational Guidelines which would have permitted a finding that Dieter was not disabled. (Tr. 17). This RFC assessment, which was adopted by the ALJ, made no mention of Dieter's use of a prescribed cane. (Id.) Yet, while the RFC did not allude to Dieter's frequent use of this assistive device which had been prescribed by her doctor, the RFC stated that Dieter could "occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs." (Id.) The ALJ also concluded that Dieter, who often used a cane, "can frequently work at unprotected height and frequently be exposed to moving mechanical parts." (Id.)

The ALJ's decision to fashion an RFC for Dieter which did not account for her undisputed use of a cane but permitted her to "occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs" and "frequently work at unprotected height and frequently be exposed to moving mechanical parts" was particularly puzzling since the ALJ also acknowledged in this decision that Dieter "attended her hearing with the assistance of a cane and testified she use the prescribed cane often but not every day." (Tr. 18).

The ALJ also gave significant weight to the preliminary September 23, 2016 state agency opinion of Dr. Potera, an opinion that was rendered prior to a series of

intervening medical events, including Dieter's reported medical decline from October 2016 through April 2018, her hospitalization in February of 2017, her prescription for use of a cane in March 2017, and the medical opinion of her treating physician, Dr. Sabre in June of 2018 that Dieter was totally disabled due to her MS. The ALJ gave Dr. Potera's preliminary, non-treating, non-examining source opinions great weight without addressing in any meaningful fashion how the subsequent treatment and opinion evidence spanning more than a year affected or undermined the weight to be given to those initial assessments. (Tr. 19). Instead, the ALJ simply discounted the treating source opinion of Dr. Sabre, stating that this opinion was inconsistent with medical records which described Dieter's normal gait. The ALJ's characterization of these treatment records, however, failed to take into account numerous instances between October 2016 and April 2018 in which Dr. Sabre described Dieter's abnormal gait, unsteady balance, and difficulties walking. (Tr. 499, 557, 653, 660, 697, 707, 716, 718, 724).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Dieter could not perform her past work, (Tr. 20), but determined at Step 5 that there were a number of other jobs in the national economy that she could perform. (Tr. 20-21). Accordingly, the ALJ concluded that Dieter did not meet the stringent standard for disability set by the Social Security Act and denied her disability claim. (Tr. 21).

This appeal followed. (Doc. 1). On appeal, Dieter argues, *inter alia*, that the ALJ's reliance on these initial preliminary opinions of consulting and state agency experts did not adequately consider or address material intervening medical developments and opinions. Dieter further contends that the RFC assessment in this case which did not account for her use of a cane but permitted her to "occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs" and "frequently work at unprotected height and frequently be exposed to moving mechanical parts" was flawed. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we agree that this case should be remanded for further consideration by the Commissioner.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. <u>See</u> 42 U.S.C. § 405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C.

§1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this

requirement, a claimant must have a severe physical or mental impairment that

makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this

assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also

Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

Further, in conducting this assessment "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). An ALJ must also "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Therefore:

> Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). See Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *7 (M.D. Pa. Sept. 26, 2014).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C.   **Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence.**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]

symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

However, case law also cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, where a state agency non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016).

### D.    A Remand is Appropriate in this Case.

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433.

This cardinal principle applies with particular force to two types of assessment made by ALJs. First, it is well-settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli

v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

Second, with respect to an ALJ's assessment of medical opinion evidence, it is clear that "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Guided by these legal tenets, we find in this case that two factors call for a remand in this case. First, the ALJ's decision to fashion an RFC for Dieter which did not account for her undisputed use of a cane but permitted her to "occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs" and "frequently work at unprotected height and frequently be exposed to moving mechanical parts" is insufficiently explained or supported in the record of these proceedings. Simply put, we cannot understand how a woman in her 50's who requires the frequent use of a prescribed cane can be expected to perform light work that entails crawling, crouching, stooping, and frequent exposure to unprotected heights. More is needed here to justify this RFC in light of the uncontested medical evidence.

Furthermore, the ALJ's decision to afford significant weight to the temporally remote, non-treating, non-examining state agency opinion of Dr. Potera without considering the intervening medical events which took place after that opinion was rendered in September of 2016 has not been adequately justified or supported on the record of these proceedings. Therefore, a remand of this case is necessary to further explain, or develop, this medical record.

On this score, the ALJ's reliance upon the September 2016 state agency and consulting doctors' opinions is particularly problematic for several reasons. First, this judgment ran contrary to the general preferences articulated by regulations and case law that call upon ALJs to give significant weight to treating and examining source opinions, and to only favor an opinion rendered by a non-examining or non-treating source when that opinion draws greater evidentiary support from the medical record.

Second, the decision to afford significant weight to this September 2016 opinion was particularly problematic since this opinion was issued near the outset of this process and without consideration of subsequent treatment records for Dieter, treatment records which later documented the exacerbation of her MS symptoms and her need for a cane. As we have observed, where a non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by

the Commissioner to carry its burden of proof. See <u>Batdorf v. Colvin</u>, 206 F. Supp.

3d 1012, 1023 (M.D. Pa. 2016). As a matter of law and common sense, material

medical developments which take place after a state agency or consulting expert's

review of a claimant's file frequently can undermine the confidence which can be

placed in this non-treating and non-examining source opinion. <u>Cadillac v. Barnhart</u>,

84 F. App'x 163, 168 (3d Cir. 2003). In short, it is well-recognized that:

> It can be inappropriate for an ALJ to rely on a medical opinion that
> was issued prior to the close of the period of claimed disability,
> particularly if a claimant's medical condition changes significantly
> after the opinion is issued. <u>See, e.g.</u>, <u>Alley v. Astrue</u>, 862 F. Supp. 2d
> 352, 366 (D. Del. 2012); <u>Morris v. Astrue</u>, Civ. Action No. 10–414–
> LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when
> a state agency physician renders an RFC assessment prior to a hearing,
> the ALJ may rely on the RFC [only] if it is supported by the record as
> a whole, including evidence that accrued after the assessment. <u>See,</u>
> <u>e.g.</u>, <u>Pollace v. Astrue</u>, Civil Action No. 06–05156, 2008 WL 370590,
> at *6 (E.D. Pa. Feb. 6, 2008); <u>see also</u> <u>Johnson v. Comm'r of Soc.</u>
> <u>Sec.</u>, Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13
> (D. Minn. Sept. 20, 2012); <u>Tyree v. Astrue</u>, No. 3:09–1091, 2010 WL
> 2650315, at *4 (M.D. Tenn. June 28, 2010).

<u>Smith v. Astrue</u>, 961 F. Supp. 2d 620, 644 (D. Del. 2013).

Applying these legal benchmarks, courts have frequently remanded cases for

further consideration by the Commissioner when great reliance is placed upon early

non-treating or non-examining source opinions, without adequate examination of the

degree to which subsequent medical developments undermined those opinions. <u>See</u>

e.g., <u>McArthur v. Berryhill</u>, No. 1:17-CV-2076, 2019 WL 1051200, at *7 (M.D. Pa.

Jan. 30, 2019), <u>report and recommendation adopted</u>, No. 1:17-CV-2076, 2019 WL

1040673 (M.D. Pa. Mar. 5, 2019); <u>Foose v. Berryhill</u>, No. 3:17-CV-00099, 2018 WL 1141477, at *9 (M.D. Pa. Mar. 2, 2018).

Here, Dr. Potera's September 2016 non-treating and non-examining source opinion simply could not take into account these later, material medical developments, including the reported decline in Dieter's conditions between October 2016 and April 2018, or the prescribed need for a cane on her part by March of 2017. Recognizing that "[i]t can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued, <u>see, e.g.</u>, <u>Alley v. Astrue</u>, 862 F. Supp. 2d 352, 366 (D. Del. 2012); <u>Morris v. Astrue</u>, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012)," <u>Smith v. Astrue</u>, 961 F. Supp. 2d 620, 644 (D. Del. 2013), we find that these material intervening medical developments undermine any reliance that can be placed on this preliminary September 2016 opinion and calls for additional consideration of the evidence relating to Dieter's physical decline and her need for a cane.

Further, the rationale for the ALJ's decision to afford these temporally remote opinions significant weight—the ALJ's conclusion that Dr, Sabre's treating source opinion that Dieter was now disabled was inconsistent with Dieter's longitudinal medical treatment records—was not fully supported by that medical history, which detailed numerous instances between October 2016 and April 2018 in which Dr.

Sabre described her abnormal gait, unsteady balance, and difficulties walking. (Tr. 499, 557, 653, 660, 697, 707, 716, 718, 724).

Moreover, the failure to fully account for these intervening medical developments, potentially prejudiced Dieter in the presentation of this claim. It is undisputed that, as a worker who is closely approaching advanced age, Dieter's disability claim was subject to consideration under the Commissioner's Medical-Vocational guidelines. See 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. Under these Medical Vocational guidelines, if Dieter—a person who is closely approaching advanced age—was found to be unable to perform light work, the grids may have mandated a finding that she was disabled. See 20 C.F.R., Part 404, Subpart P, Appendix 2, §§ 201.12 and 201.14; Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *8 (M.D. Pa. Sept. 26, 2014). Thus, any evidence which eroded the reliability of Dr. Potera's initial opinion may well have been outcome determinative in this case. Since such evidence existed in this case, and was not fully assessed by the ALJ who fashioned an RFC for Dieter that allowed her to perform light work at unprotected heights without accounting for her need for a cane, a remand is warranted in this case.

Yet, while case law calls for a remand and further proceedings by the ALJ in this case, assessing this claim in light of this evidence, nothing in our opinion should

be construed as suggesting what the outcome of that final and full analysis should

be. Rather, that final assessment of the evidence must await a thorough consideration

and development of this evidence on remand by an ALJ. Therefore, nothing in this

opinion should be deemed as expressing a view on what the ultimate outcome of any

reassessment of this evidence should be. Rather, that task should remain the duty

and province of the ALJ on remand.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be

REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


Submitted this 1st day of June, 2020